IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. - Atlanta

OCT 1 2 2007

JAMES N. HATTEN, Clerk
By: ⟨signature⟩ Deputy Clerk

ELIZABETH MORRIS, individually
and as Next of Kin to Mario
Williams and Angelique Heard,
minors; MARIO WILLIAMS,
ANGELIQUE HEARD, minors

        Plaintiffs

v.

DOUGLAS COUNTY BOARD OF
EDUCATION OR DOUGLAS COUNTY
SCHOOL SYSTEM; et al.,

        Defendants

CIVIL ACTION NO.
1:07-CV-00162-ODE

## ORDER

This civil rights action alleging deprivation of Plaintiffs' rights under the U.S. Constitution in violation of 42 U.S.C. § 1983 and under Georgia law, is before the court on Defendants' motions to dismiss Plaintiffs' first and second amended complaints for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, Defendants' motion to dismiss is granted.[1]

I.  Factual and Procedural Background

---

[1] Under the Federal Rules of Civil Procedure, an amended complaint supersedes the original complaint. Fritz v. Standard Sec. Life Ins. Co. of New York, 676 F.2d 1356, 1358 (11th Cir. 1982). Plaintiffs' second amended complaint is, therefore, the operative pleading in this case. While the Court addresses the defenses raised in Defendants' motion to dismiss Plaintiffs' first amended complaint which were incorporated by reference into Defendants' motion to dismiss Plaintiffs' second amended complaint, it is the second amended complaint, and therefore the later motion, upon which the Court bases its ruling.

On January 22, 2007 Plaintiffs, Elizabeth Morris, Mario Williams, and Angelique Heard, filed suit against the "Douglas County Board of Education or Douglas County School System," (School Board or System); Donald Remillard, individually and in his official capacity as Superintendent of Schools; George Chip, individually and in his official capacity as Assistant Principal; Monty Fountain, individually and in his official capacity as Physical Education Instructor; and Christy Clark, individually and in her official capacity as School Resource Officer.   Mario Williams, (hereinafter "Mario"), was a seventh grade student at Fairplay Middle School during the 2004-2005 school year, and began attending Alexander High School, as a ninth grade student, in August 2006.   Elizabeth Morris, (hereinafter "Ms. Morris"), is Mario's grandmother and custodian. Angelique Heard, (hereinafter "Angelique"), is Mario's cousin.

Less than one month after filing the original complaint, Plaintiffs filed their first amended complaint on February 16, 2007, and added two defendants, suing Rob Brown, individually and in his official capacity as Assistant Principal, and Kathy Capps, individually and in her official capacity as Support Staff. Defendants moved to dismiss Plaintiffs' Amended Complaint on March 23, 2007, and the Court granted Plaintiffs' motion for leave to file their second amended complaint on March 26, 2007.  Defendants subsequently filed a motion to dismiss Plaintiffs' second amended complaint on April 12, 2007.  Plaintiffs have filed responses in opposition to the motions to dismiss, and Defendants have filed reply briefs in support of their motions.

2

In their second amended complaint (hereinafter "complaint"), Plaintiffs assert the following claims: (1) Count 1 - conspiracy to violate and violation of substantive due process rights under the 14th Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1985(3) and 42 U.S.C. § 1983 against all Defendants; (2) Count 2 - conspiracy to violate and violation of procedural due process rights under the 14th Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1985(3) and 42 U.S.C. § 1983 against all Defendants; (3) Count 3 - conspiracy to interfere and interference with equal protection rights under the 14th Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1985(3) and 42 U.S.C. § 1983 against all Defendants;[2] (4) Count 4 - unlawful arrest and search under the 4th Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 against all Defendants; (5) Count 5 - violation of the right to free speech under the 1st Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983; (6) Count 6 - assault and battery against all Defendants; (7) Count 7 - defamation against all defendants; (8) Count 8 - intentional infliction of emotional distress against all defendants.  In a nutshell, Plaintiffs allege that during Mario's time at Fairplay Middle School and Alexander High School, Mario was wrongfully charged and detained for truancy, labeled as a troubled student, unfairly treated by his physical education instructor, unjustly suspended on multiple occasions, falsely accused of being a gang member, and

---

[2]     Plaintiffs also claim that Defendants violated their rights to equal protection of the law under the Georgia Constitution.

3

generally harassed by Defendants.  For the sake of clarity, each set of allegations is outlined separately below.

### A. Truancy Proceedings:

In August 2005, while Mario was a student at Fairplay Middle School, Plaintiffs state that the Douglas County Juvenile Court ordered School Resource Officer and Douglas County Deputy Chiquita Batey  to bring Mario to Court for truancy charges lodged against him.[3]  Plaintiffs contend that Mario was wrongfully arrested and transported to Juvenile Court by Deputy Batey, unjustly handcuffed and shackled by an unnamed Douglas County Deputy, and subsequently detained for four hours prior to his truancy hearing.  After the hearing, Mario was released to return to school.

### B. Unfair treatment by Physical Education teacher

Plaintiffs also allege that Mario was harassed and humiliated by his physical education instructor, Monty Fountain (hereinafter "Mr. Fountain").   Namely, Plaintiffs state that Mr. Fountain instructed Mario to lift weights beyond his capacity, and then called him a "sissy" when he was not able to complete the task. On a different occasion, Mr. Fountain requested volunteers to demonstrate lifting weights in class, Mario volunteered and Mr. Fountain responded, "No, I don't want you." Plaintiffs also cite the fact that Mario was scheduled for two physical education classes in the same term, and Mr. Fountain failed to remove one of

---

[3] Neither the Douglas County Juvenile Court nor Deputy Batey are named as defendants in this lawsuit.

4

the classes when Mario requested that he do so. Ultimately, the Assistant Principal of Alexander High School, Steven Batey (hereinafter "Mr. Batey"), removed one of the classes from Mario's schedule. In August and September 2006, Plaintiffs contend that Mr. Fountain did not allow Mario to call home after Mario had informed Mr. Fountain that he was ill.

### C. Suspensions

While Mario was a student at Alexander High School, he was suspended from school approximately six times, and was ultimately expelled from attending school through 2008.[4] Mario was suspended from school for a number of reasons, including checking out of school early, fighting, and violating the school dress code. Plaintiffs allege that these were unjust suspensions as Mario was authorized to leave school early for a doctor's appointment, was not a gang member, did not violate the school dress code, and was being unfairly singled out for disciplinary action.

Plaintiffs also recount the events preceding one of Mario's suspensions to highlight what Plaintiffs' refer to as Defendants' "conspiratorial" and "malicious" behavior. In early 2007,[5] Mario was suspended for falsifying a witness report to a school fight.

---

[4] This is an approximate calculation and includes both in and out of school suspensions. Many of the allegations in Plaintiffs' complaint do not include dates, and it is difficult to ascertain the exact number of suspensions during this time period.

[5] The complaint again fails to specify a date upon which the related incident occurred. From other inferences and allegations, it appears that the suspension happened roughly sometime in January 2007.

5

"Sometime after Ms. Morris and Mario arrived at their home, [presumably after Mario's suspension] Ms. Morris received a call from AHS that her other grandchild, Quentin, had been jumped on." (Pls.' second amended complaint at 27).  Ms. Morris, Mario, and Angelique returned to Alexander High School, and waited for Mr. Chip outside of his office.  While waiting, Mario said to another student, Chris Watson, "Ya'll jumped my cousin."  Upon saying this, Watson "jumped up as if he was going to lunge at Mario," and an "unknown Douglas County Deputy handcuffed Mario and Angelique."[6]  Deputy Lewis Fredenburg subsequently charged Mario with disorderly conduct and simple assault, removed the handcuffs from Angelique's and Mario's wrists, and released Mario to go home.[7]  Plaintiffs assert that, to their knowledge, Watson was not handcuffed or charged with any offense.  Mario was suspended for ten days following this event.

Believing that the disciplinary actions taken against Mario were unfounded, Ms. Morris filed a request with the School Board on December 15, 2006 to expunge Mario's disciplinary record.  The School Board responded to Ms. Morris's request in a letter that she received on January 20, 2007.  The Board concluded that Mario's "consequences for these infractions are consistent with

---

[6]  Plaintiffs allege that "Ms. Capps [support staff at Alexander High School] accused Angelique of taking pictures on a cell phone and grabbed her in an offensive manner."  It is unclear whether Angelique was taking photographs of the unfolding incident or exactly how this allegation relates to the sequence of events.

[7]  Deputy Fredenburg is not a defendant to this action, and Plaintiffs do not state whether he is a School Resource Officer.

6

the Douglas County Discipline Code." Plaintiffs complain that the School Board did not meet with Plaintiffs and their counsel prior to making a decision, nor did the School Board "address the individual concerns that Plaintiffs outlined" in their complaint.

Plaintiffs next make allegations regarding a "Tribunal Hearing" for which the Court is at a loss in deciphering. In their second amended complaint, Plaintiffs do not allege who held the hearing or precisely why it was held. The first reference to the hearing occurs on page 26 of Plaintiffs' second amended complaint, wherein Plaintiffs state in a footnote, "A Tribunal was held on February 1, 2007, during which the Board expelled Mario from attending AHS through 2008." The next reference occurs on page 31 without any sort of reference to which disciplinary action the Board was reviewing; "On February 1, 2006, during the Tribunal Hearing for Mario, Mr. Brown denied Mario an opportunity to present evidence to show that the absences in his record were justified."[8] Plaintiffs' allegations are unintelligible. Many of the allegations are not made in the operative complaint, but rather are loosely referred to in Plaintiffs' response brief.

From this tangled web of allegations, the Court infers that the School Board held a hearing on February 1, 2007 to determine whether Mario violated school policy upon returning to school with Ms. Morris and Angelique on January 19, 2007 after having been

---

[8] Plaintiffs allege in their second amended complaint that the "Tribunal Hearing" was held on February 1, 2006. Plaintiffs, however, refer to this tribunal as the February 1, 2007 hearing in their response brief. From all other indications, it appears that the hearing was held in 2007 and not in 2006.

7

suspended earlier that day. According to Plaintiffs, the hearing was unfair because Alexander High School produced witnesses and statements without previously disclosing them to Plaintiffs, and refused to allow Plaintiffs to introduce certain documents to refute unexcused absences on Mario's record. [9] Furthermore, Plaintiffs contend that Mario was expelled from attending Alexander High School through 2008 as a result of this tribunal hearing.

### D. Mario accused of being a gang member

Plaintiffs also assert that Mario was falsely accused of belonging to a gang while he was student at Alexander High School. Specifically, Plaintiffs state that George Chip (hereinafter "Mr. Chip"), Alexander High School Assistant Principal, called Mario into his office for violating the dress code and "erroneously insinuat[ed] that he was in a gang." (Pls.' second amended complaint at 14). Plaintiffs contend that Mr. Chip had Mario searched in his office even though Mario did not in fact violate the dress code. Subsequently, Ms. Morris was called to the high school and informed by Deputy Christy Clark that a picture of Mario had been seen on the internet, depicting Mario in a gang and holding a gun. When Deputy Clark showed Ms. Morris the photograph on the internet, Plaintiffs assert that Mario was not in the picture. In addition to this incident, Plaintiffs claim that Mr. Chip asked Mario on several occasions, "What gang are you in?" and

---

[9] Plaintiffs assert that the School Board relied upon these unexcused absences in sentencing Mario.

8

"erroneously [wrote] Mario up for being in a gang called 'Bloods'."

Furthermore, Plaintiffs generally contend that Defendants labeled Mario as a troubled student, were uncooperative in meeting with Ms. Morris, did not address Ms. Morris's and Mario's concerns, and treated Mario in an unfair manner. Plaintiffs' allegations are discussed in more detail below, as they relate to each count.

## II. Standard of Review

Defendants move to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In reviewing a motion to dismiss under 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)(abrogating Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While the court does not impose a heightened pleading requirement when reviewing motions to dismiss under Rule 12(b)(6), the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1974.

## III. Discussion

### A. Douglas County Board of Education or Douglas School System:

9

In Georgia, a county board of education "is not a body corporate and does not have the capacity to sue or be sued." Cook v. Colquitt Co. Bd of Educ., 261 Ga. 841, 412 S.E.2d 828 (Ga. 1992). A county board of education may be sued only if the state legislature has passed an act creating a school board with the power of suing and being sued. Id. Here, Plaintiffs do not allege that any legislation has been passed enabling the Douglas County Board of Education to be sued. Instead, Plaintiffs contend that by participating in Mario's suspension, the Board has waived any right to immunity, citing Brown v. Penland Construction Co., Inc., 276 Ga. App. 522, 623 S.E.2d 717 (Ga. Ct. App. 2005) (overruled on other grounds). Brown, however, involved a contract dispute over a facility built on property owned and insured by a school board. Id. at 522-23, 718-19. Having held itself out as a legal entity, the Georgia Court of Appeals held that the school board was equitably estopped from disclaiming its legal status in the litigation. Id. at 525-26, 720. The reasoning of Brown is inapposite here as there are no indications that the Douglas County School Board held itself out as a legal entity. As such and for the reasons discussed above, all counts against the School Board are dismissed. Even assuming that the Board had held itself out as a legal entity and that it was capable of being sued, Plaintiffs claims against it would fail under Rule 12(b)(6) as outlined below.

Plaintiffs also filed suit against the "Douglas County School System," in connection with the charges lodged against the School Board; in other words, the complaint reads "Douglas County Board of Education or Douglas County School System." Without too much

semantic parsing of the word "or" in Plaintiffs' complaint, it appears that Plaintiffs viewed the Board and the "System" as equivalents because they were not listed as separate legal entities in the complaint.  Similarly, Plaintiffs state in the complaint that "Defendant, Douglas County Board of Education or Douglas County School System, was served through the request for 'Waiver of Service of Summons' through Don Remillard, Superintendent, Douglas County Board of Education."   Here, Plaintiffs refer to the School Board and System as one singular defendant.   Nonetheless, in their response to Defendants' motion to dismiss, Plaintiffs contend that the reference to the "School System" was meant to invoke the Douglas County School District, stating that the "Douglas County School System and the Douglas County School District is one in the same." (Pls.' Resp. to Defs.' Mot. to Dismiss Am. Compl. at 16).  Such a bald legal assertion, however, does not render the nebulously titled "Douglas County School System" the Douglas County School District.   Since the Douglas County School District is not a party to this lawsuit, and Plaintiffs have failed to allege that the "School System" is a legal entity capable of being sued, all claims against the School System are dismissed.

### B.    Federal Claims

The Court now turns to Plaintiffs' claims against Donald Remillard, Rob Brown, George Chip, Monty Fountain, Kathy Capps, and Christy Clark, (hereinafter, the "individual defendants).  For

the reasons outlined below, Plaintiffs fail to state any federal claims upon which relief may be granted under Rule 12(b)(6).[10]

When claiming a civil rights violation pursuant to 42 U.S.C. § 1983, a plaintiff must allege the deprivation of a right created by the U.S. Constitution or laws of the United States by a person acting under color of state law.  42 U.S.C. § 1983.  Plaintiffs assert that the individual defendants have violated a number of their constitutionally protected rights.  The court addresses each count seriatim.[11]

1.    Substantive Due Process

Plaintiffs first allege that Defendants violated and conspired to violate Mario's rights to substantive due process

_____

[10]   Although Plaintiffs fail to allege that the School Board or System are legal entities capable of being sued, the Court refers collectively to the Defendants (both individuals and School Board or System) when discussing Defendants' motion to dismiss under Rule 12(b)(6).  Assuming arguendo that Plaintiffs could sue the School Board or System, they ultimately fail to state any claims upon which relief can be granted.

[11]   In addition to claiming that Defendants have violated their constitutional rights to substantive due process, procedural due process, and equal protection, Plaintiffs also contend that Defendants conspired to violate or interfere with those rights. As the Court explains infra, Plaintiffs fail to state any claims for violations of their substantive due process, procedural due process, or equal protection rights.    Without sufficient allegations that any of their constitutional rights have been violated, Plaintiffs' conspiracy claims fail under 42 U.S.C. § 1983.  GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998).   While Plaintiffs also cite 42 U.S.C. § 1985 when raising their conspiracy claims, they do not allege that Defendants' actions stemmed from racial or class based animus, as is required under that section.  Id. at 1370 n.11.  Plaintiffs' conspiracy charges are accordingly dismissed.

12

under the 14th Amendment to the U.S. Constitution. Specifically, Plaintiffs allege that Defendants deprived Mario of Constitutionally protected fundamental rights by unjustly arresting him prior to his truancy hearing; the embarrassment and unjust treatment he suffered at the hands of his physical education teacher; the disciplinary actions that Mario incurred; Defendants' general lack of concern for his safety and well-being; Defendants' failure to investigate or address Plaintiffs' concerns; Mario's inability to play high school sports due to disciplinary action; the improper handcuffing of Mario and Angelique in the incident that occurred on January 17, 2007; and by ruining Mario's reputation by labeling him as a gang member. Defendants respond in turn, stating that Plaintiffs have failed to allege any viable substantive due process claims because Mario's suspensions do not trigger substantive due process rights, Defendants' alleged lack of concern did not violate Mario's substantive due process rights, and Plaintiffs' remaining allegations fail to state cognizable substantive due process claims.   For the reasons provided below, the Court agrees with Defendants that Plaintiffs have failed to allege any viable substantive due process claims under the 14th amendment to the U.S. Constitution.

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The Clause provides both substantive and procedural due process protection under the Constitution.   See Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 768, 125

S.Ct. 2796, 2810, 162 L.Ed.2d 658 (2005). Substantive due process "protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (citing   Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)(overruled on other grounds)).  In   McKinney, the United States Court of Appeals for the Eleventh Circuit expressed the necessity for judicial restraint when exploring new substantive due process questions; "[T]he [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended."  McKinney, 20 F.3d at 1556.

Here, Plaintiffs' substantive due process claims fail under Rule 12(b)(6).  Under a well established body of law in the Eleventh Circuit, Plaintiffs' substantive due process claims based on Mario's suspensions from school must fail because "the decision to suspend a student is an executive act, any deprivation of the state-created right to attend school is protected only by the guarantee of procedural due process." DeKalb Stone, Inc v. County of DeKalb, Ga., 106 F.3d 956, 960 (11th Cir. 1997)(summarizing holding in C.B. ex rel. Breeding v. Driscoll, 82 F.3d 383 (11th Cir. 1996)).  With respect to the claims based on Defendants' alleged lack of care about Mario's safety, (i.e., in labeling Mario as a gang member, failing to investigate Ms. Morris's concerns, and not being allowed to call home during physical education class due to illness), Plaintiffs fail to allege that Defendants affirmatively acted in restraining Mario from acting on his own behalf as is required in this situation under, DeShaney v.

<u>Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) and <u>Wyke v. Polk County School Bd.</u>, 129 F.3d 560 (11th Cir. 1997)(holding that "compulsory school attendance laws alone are not a 'restraint of personal liberty' sufficient to give rise to an affirmative duty of protection"). Plaintiffs' remaining allegations similarly fail to state any cognizable substantive due process claims because they cite no fundamental rights or constitutionally protected interests.

### 2.   Procedural Due Process

Plaintiffs' allegation with respect to procedural due process reads, in its entirety, as follows: "Don Remillard and Douglas County Board of Education or Douglas County School System failed to provide Plaintiffs with a meaningful opportunity to prove the merit of their December 15, 2006 complaint in a fashion required by procedural due process and, therefore, deprived Mario of his liberty and property rights.      Defendants' actions and/or inactions, as stated above, were conspiratorial in nature, malicious and aimed at Mario with the intent of harming him." (Pls.' second amended complaint at 35). As recounted above, the School Board responded to Plaintiffs' complaint in a letter, having found that the disciplinary action imposed was commensurate with the Douglas County Discipline Code. Essentially, Plaintiffs claim that their procedural due process rights were violated because they were not given an adequate opportunity to contest the validity of Mario's suspensions on appeal. Thus, their argument is not directed at the procedure for suspending Mario but rather at the appeal of the suspension. Under Supreme Court precedent,

15

appellate review of student suspensions is not required under the Fourteenth Amendment.  See Goss v. Lopez, 419 U.S. 565, 582-584 (1975).  Plaintiffs' procedural due process claims are accordingly dismissed.

### 3.  Equal Protection[12]

Plaintiffs submit that Defendants deprived Mario of equal protection of the laws under the Fourteenth Amendment to the United States Constitution by selectively enforcing the school discipline code and dress code against Mario.  In other words, Plaintiffs do not assert a "typical" claim under the Equal Protection Clause.  They do not maintain that Mario was discriminated against because he belongs to a protected class such as race or gender.  Instead, Plaintiffs contend that Defendants disciplined Mario more harshly than students similarly situated to him, treating him as a "class of one."  Defendants counter, stating that Plaintiffs have failed to allege a viable "class of one" equal protection claim.

---

[12]  In Count 3, Plaintiffs also invoke a separate "privileges and immunities" claim under the Fourteenth Amendment of the U.S. Constitution, stating, "The Defendants deprived Mario of privileges and immunities available to all citizens." (Pls. Second amended complaint at 37).  It is unclear what federal right - recognized under the Fourteenth Amendment Privileges and Immunities Clause - Plaintiffs are asserting has been violated here.  Rights currently recognized under that clause include federal rights such as the right to interstate travel and the right to vote in federal elections.  See Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873).  Because Plaintiffs fail to allege any right protected by the privileges and immunities clause, any claim under this theory is dismissed.

16

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has recognized what has been deemed a "class of one" claim under the Equal Protection Clause in limited situations. Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Applying Olech, Plaintiffs must allege that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 528 U.S. at 564, 120 S.Ct. 1073. The Eleventh Circuit has recently held, "when plaintiffs in 'class of one' cases challenge the outcome of complex, multi-factored government decision making processes, similarly situated entities 'must be very similar indeed.'... A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is "similarly situated" to another." Griffin Industries, Inc. v. Irvin, 2007 WL 2363343, *12 (11th Cir. 2007) (internal citations omitted).

While Plaintiffs invoke the Supreme Court's language in Olech, their allegations are nothing more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). Plaintiffs contend that Mario was treated differently than Chris Watson, the student who was not disciplined when Mario was charged and handcuffed. School disciplinary action involves complex decision making, and Plaintiffs fail to assert more than this one isolated incident in alleging that similarly situated entities were treated

17

differently.[13]   In fact, other than their status as high school students, Plaintiffs fail to allege how Mario and Chris Watson are similar in any respect.  Under both Olech and Griffin Industries, the Court holds that Plaintiffs fail to state a viable "class of one" equal protection claim.  Olech, 528 U.S. 562, 120 S.Ct. 1073, Griffin Industries, 2007 WL 2363343 (11th Cir. 2007).

The   Court   exercises   supplemental   jurisdiction   over Plaintiffs' equal protection claim under the Georgia Constitution because it involves the same controversy discussed above.   28 U.S.C. § 1367(a).  Since the protection provided under the Equal Protection Clause of the United States Constitution is coextensive with that under Art. I., § I, Par. II of the Georgia Constitution of 1983, In the Interest of A.N. et al, children, 281 Ga. 58, 62, 636 S.E.2d 496, 500 (Ga. 2006), Plaintiffs' state law claim is also dismissed following the preceding analysis.

### 4.   False Arrest/Unreasonable Search

Plaintiffs cite to three separate instances in asserting constitutional violations under the Fourth Amendment to the U.S. Constitution.  First, Plaintiffs claim that the School Board or System "caused Mario to be unlawfully arrested, handcuffed and

---

[13]    While Plaintiffs allege that Mario was treated more harshly than students similarly situated to him, they make no allegations as to how this transpired.  Under Twombly, Plaintiffs must do more than recite the elements of the claim.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007).  Therefore, the Court is only presented with allegations referring to the disparate treatment between Mario and Chris Watson.

18

shackled in the Douglas County Juvenile Courts in 2005."  For the reasons outlined supra, the School Board or System are not legal entities capable of being sued.  Nor do Plaintiffs allege that any of the individual defendants were connected with his arrest in 2005.  Plaintiffs merely state that an unidentified Douglas County Deputy handcuffed and shackled Mario.  Even assuming that the School Board or System were capable of being sued, Plaintiffs cannot hold them responsible for this arrest under a respondeat superior theory.  See Monell v. Dep't of Social Servs of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Next, Plaintiffs contend that "Mr. Chip, Mr. Fountain and Deputy Clark did falsely and unlawfully cause Mario to be searched in September 2006, in which resulted no fruit."  Under New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), Plaintiffs fail to state a claim for an unlawful search under the Fourth Amendment.  In New Jersey v. T.L.O., the Supreme Court held that, "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place."  New Jersey v. T.L.O., 469 U.S. 325, 341, 105 S.Ct. 733, 742 - 743 (1985)(internal citations omitted).  Here, the search was justified at its inception considering Mr. Chip's reasonable suspicion that Mario was a gang member, based on the internet photograph and the clothes Mario was wearing.  Second, Plaintiffs

19

do not allege any facts that would suggest that the scope of the search was not reasonably related to the concern that Mario was in a gang. Plaintiffs' claim based on Mr. Chip's search of Mario is accordingly dismissed.

Finally, Plaintiffs claim that "Mr. Brown, Mr. Chip, Mr. Fountain, Ms. Capps and Deputy Clark did falsely and unlawfully arrest or cause Mario and Angelique to be arrested without legal cause in January 2007." Similar to the situation outlined above, Mario and Angelique were handcuffed by an unidentified Douglas County Deputy. Plaintiffs do not allege that Defendants handcuffed Mario or Angelique nor do they allege that Defendants made the decision to handcuff them. Other than a hollow assertion that Defendants "caused" Mario and Angelique to be arrested, Plaintiffs do not specify how Defendants were the impetus of the detention. For all of these reasons, Plaintiffs' claims under the Fourth Amendment fail under Rule 12(b)(6).

### 5. First Amendment - Free Speech

Plaintiffs contend that the recent truancy charges lodged against Mario and Angelique were filed in retaliation for the Plaintiffs filing the present action, and thus Defendants have violated their rights under the First Amendment. Defendants maintain that Plaintiffs have failed to plead a viable First Amendment claim because they have not alleged that there was no probable cause supporting the truancy charges.

"The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal

20

prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256, 126 S.Ct. 1695, 1701 (2006) (citations omitted). In Hartman, the Supreme Court held that a plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause in the alleged retaliator's pressing underlying criminal charges. 547 U.S. at 265-66, 126 S.Ct. 1707. While this case involves truancy charges rather than traditional criminal charges, the Court finds that the Supreme Court's reasoning in Hartman is apposite. As in Hartman, the absence of probable cause in charging Mario and Angelique with truancy is probative of whether Defendants were acting in retaliation to Plaintiffs' lawsuit. Here, Plaintiffs have not alleged that there was no probable cause supporting the truancy charges. As with the other counts discussed supra, all that Plaintiffs provide are bald incantations of the cause of action without the necessary factual allegations. As such, Plaintiffs' First Amendment claim is similarly dismissed.

C. Qualified Immunity:

Having found that Plaintiffs fail, under Rule 12(b)(6), to state any constitutional claims, the Court need not reach the qualified immunity questions raised by the Defendants.

D.   Georgia Tort Claims:

Finally, Plaintiffs claim that Defendants are liable under Georgia law for assault and battery, defamation, and intentional infliction of emotional distress. Exercising supplemental jurisdiction under 28 U.S.C. § 1367(a), the standard in Georgia

for dismissing a complaint for failure to state a claim upon which relief can be granted reads as follows: "A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." Allen v. Yost, 281 Ga. 102, 103, 636 S.E.2d 517, 518 (Ga. 2006). For the reasons set forth below, Plaintiffs' claims under Georgia tort law are dismissed.

Plaintiffs' assault and battery count fails to state a claim upon which relief can be granted because Mario and Angelique were not handcuffed by any of the named Defendants, but rather by an unidentified Douglas County Deputy. Nor do Plaintiffs allege that Defendants made the decision to arrest Mario and Angelique, ordered the arrest or cite to any facts that would indicate that Defendants "caused" Mario and Angelique to be arrested. Similarly, Plaintiffs' defamation count fails to state a cognizable claim. Under Georgia law, "when the claim alleged is a traditionally disfavored cause of action, such as malicious prosecution, libel, and slander, the courts tend to construe the complaint by a somewhat stricter standard." Willis v. United Family Life Ins., 226 Ga.App. 661, 662, 487 S.E.2d 376, 379 (Ga. Ct. App. 1997). On the face of the complaint, Plaintiffs do not allege any facts amounting to defamation. As in other instances, they recite the legal cause of action without providing factual

22

allegations to support the count.  Finally, Plaintiffs' claim for intentional infliction of emotional distress is dismissed because Plaintiffs fail to allege any acts by the Defendants which were "intentional, reckless, extreme and outrageous."   In order to present a claim for intentional infliction of emotional distress, Plaintiffs need to show that Defendants' conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  <u>Turnbull v. Northside Hosp., Inc.</u>, 220 Ga.App. 883, 884, 470 S.E.2d 464, 466 (Ga. Ct. App. 1996)(internal citations and quotations omitted).  Plaintiffs fail, as a matter of law, to set forth a claim for intentional infliction of emotional distress.

Furthermore, even assuming Plaintiffs could go forward with these claims, they would not be able to recover any monetary damages under Georgia law.   Pursuant to Ga. Code Ann. § 20-2-1000(b), "No educator shall be liable for any civil damages for, or arising out of, any act or omission concerning, relating to, or resulting from the discipline of any student or the reporting of any student for misconduct, except for acts or omissions of willful or wanton misconduct."   Ga. Code Ann. § 20-2-1000(b) (2007).  An educator is defined as, "any principal, school administrator, teacher, guidance counselor, paraprofessional, school bus driver, volunteer assisting teachers in the classroom, tribunal members, or certificated professional personnel."  Ga. Code Ann. § 20-2-1000(a) (2007).  Here, all of the individual Defendants qualify as "educators" under this section.   Since Plaintiffs seek civil damages, rather than

injunctive relief, and have failed to allege any "acts or omissions of willful or wanton misconduct," the individual Defendants shall not be liable for any civil damages under this statute.

## IV. Conclusion

Defendants' motion to dismiss Plaintiffs' second amended complaint [14] is GRANTED.

SO ORDERED, this _12_ day of October, 2007.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

24